IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: <br> COOPER MANUFACTURING <br> CORPORATION <br> DEBTOR | § <br> § <br> § <br> § <br> § | CASE NO. 03-36812-H4-7 <br> (CHAPTER 7) |
| BEN B. FLOYD, TRUSTEE <br> PLAINTIFF <br><br> v. <br><br> AMERICAN BLOCK <br> ROLAND NILES INTERNATIONAL, INC. <br> OILFIELD SHELTERS, INC. <br> TRIPLE-S STEEL SUPPLY CO. <br> DEFENDANTS | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | <br><br><br><br><br><br> ADVERSARY NO. 05-03317 <br> ADVERSARY NO. 05-03335 <br><br> ADVERSARY NO. 05-03332 <br> ADVERSARY NO. 05-03337 |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

The matters before the Court are cross-motions for Partial Summary Judgment brought by Ben B. Floyd, the Chapter 7 Trustee (the Trustee), as the plaintiff, and certain creditors, as the defendants. The parties request the Court to adjudicate whether certain transfers of letters of credit proceeds (the LOC Transfers) made by Cooper Manufacturing Corporation (Cooper) to its four creditors constitute avoidable preferences under 11 U.S.C. § 547(b).[1]

Cooper is the Debtor in this Chapter 7 bankruptcy case filed on May 7, 2003. On May 6, 2005, the Trustee brought an adversary proceeding against some vendors of Cooper to recover various transfers pursuant to 11 U.S.C. §§ 547, 549 and 550. On March 1, 2006, the Trustee moved for Partial Summary Judgment against American Block (American), Roland Niles International, Inc. (Roland), Oilfield Shelters, Inc. (Oilfield), and Triple-S Steel Supply Co. (Triple-S) (collectively, Defendants). Defendants sold parts and services to Cooper prior to the 2003 bankruptcy filing. In his Motions, the Trustee alleges that the LOC Transfers to Defendants constitute preferences under § 547(b). At the same time, Oilfield filed a Motion for Summary Judgment. Triple-S filed a Motion for Partial Summary Judgment. In their Motions, Oilfield, and Triple-S seek a judgment that the Trustee take nothing from this adversary proceeding on the LOC Transfers. American and Roland filed Responses to the Trustee's Motion but did not move for summary judgment.

---

[1] The facts surrounding the LOC Transfers as to the four creditors are almost identical except for the dollar amounts. The Court therefore addresses the four adversary proceedings collectively.

1

On May 6, 2003, Defendants received proceeds of a Letter of Credit (the LOC) issued to Cooper, as beneficiary, pursuant to purported assignments made by Cooper to Defendants in May 2002. The dispositive question presented by the parties' competing Motions is whether the LOC Transfers occurred within the 90-day preference period, or more specifically, whether the LOC Transfers occurred in May 2002 when the alleged assignments were made, or in May 2003 when the payments were received. The Trustee argues that the LOC Transfers occurred when Defendants received the actual payments on May 6, 2003 and therefore are subject to the Trustee's avoidance power under § 547(b). This Court disagrees. Because the Court believes that valid irrevocable assignments of the LOC proceeds were completed in May 2002, almost one year before the bankruptcy petition, the LOC Transfers occurred outside the 90-day preference period and thus cannot be avoided as preferences by Trustee under § 547(b). Therefore, the Court denies the Trustee's Motions for Partial Summary Judgment as to the LOC Transfers and grants Oilfield's and Triple-S' Motions for Partial Summary Judgment.

In his Motions, the Trustee also claims that certain cash payments in the forms of checks (Cash Transfers) made by Cooper to American, Roland, and Triple-S within the preceding 90 days of the bankruptcy petition constitute preferences under §547(b). American, Roland, and Triple-S do not challenge the Trustee's position that the Cash Transfers were preferences under § 547(b), but reserve their affirmative defenses for trial. Therefore, the Trustee's Motions for Partial Summary Judgment as to the Cash Transfers are granted. Trial will be held solely on the affirmative defenses to the Cash Transfers.

In sum, the Trustee's Motions for Partial Summary Judgment are granted in part and denied in part, and Oilfield's and Triple-S' Motions for Partial Summary Judgment are granted in their entirety. As there is no dispute over the Cash Transfers for the purpose of the Trustee's Summary Judgment Motions, this Memorandum Opinion addresses only the LOC Transfers.

## II. FINDINGS OF FACT

The facts, either as stipulated to or admitted by counsel of record, or as determined from the record and from the testimony set forth in, and exhibits attached to, the affidavits incorporated into the motions for summary judgment, in chronological order, are as follows:

1. On March 29, 2002, Cooper became the beneficiary of a letter of credit (the LOC) issued by Commerzbank Eurasjia (the Issuing Bank). Commerzbank New York served as the confirming bank for the LOC (the Confirming Bank). JPMorgan Chase Bank (Chase) served as the advising bank of the LOC. (*See* the Letter of Credit, Tr's Mot. Summ. J., Adv. No. 05-03317, Doc. No. 23, Ex. CB2; Adv. No. 05-03335, Doc. No. 22, Ex. CB2; Adv. No. 05-03332, Doc. No. 32, Ex. CB2; Adv. No. 05-03337, Doc. No. 37, Ex. CB2.)

2. In March 2002, Cooper attempted to assign certain proceeds of the LOC to Defendants, in the amounts of $142,000.00 to American, $78,636.00 to Roland, $96,280.00 to Oilfield, and $193,321.93 to Triple-S, respectively. Cooper issued written instructions to the Confirming Bank instructing it to pay Defendants the stated amount from the proceeds of the LOC upon the Confirming Bank's honor of the Debtor's draft. The Confirming Bank, however, rejected Cooper's request to assign the LOC proceeds, refusing to handle the

large number of assignments Cooper had requested. (*See* Teichgraeber Affs., Tr's Mot. Summ. J., Adv. No. 05-03317, Doc. No. 23, Ex. B; Adv. No. 05-03335, Doc. No. 22, Ex. B; Adv. No. 05-03332, Doc. No. 32, Ex. B; Adv. No. 05-03337, Doc. No. 37, Ex. B.)

3. On May 22, 2002, Cooper executed four separate letters of "Assignment of Proceeds" (collectively, Assignment Letters or Letters) instructing Chase to pay $142,000.00 to American, $78,636.00 to Roland, $96,280.00 to Oilfield, and $193,321.93 to Triple-S, respectively, when Cooper's draft on the LOC was honored. (*See* Assignment Letters, Tr's Mot. Summ. J., Adv. No. 05-03317, Doc. No. 23, Ex. A at CHASE00026; Adv. No. 05-03335, Doc. No. 22, Ex. A at CHASE00057; Adv. No. 05-03332, Doc. No. 32, Ex. A at CHASE00061; Adv. No. 05-03337, Doc. No. 37, Ex. A at CHASE00069.) Cooper gave these instructions with the understanding that it would provide Chase with all documents necessary for presentment under the LOC. Under this arrangement, Chase would then present these documents to the Confirming Bank, receive the LOC proceeds, and disburse payment to Defendants. (*See* Teichgraeber Affs., Tr's Mot. Summ. J., Adv. No. 05-03317, Doc. No. 23, Ex. B; Adv. No. 05-03335, Doc. No. 22, Ex. B; Adv. No. 05-03332, Doc. No. 32, Ex. B; Adv. No. 05-03337, Doc. No. 37, Ex. B.) Together with the Assignment Letters, Cooper delivered the actual LOC to Chase. (Stude Aff., Triple-S' Mot. Summ. J., Adv. No. 05-03337, Doc. No. 38, Ex. E at ¶3.) Chase approved the assignments and endorsed the LOC. (*Id.*)

4. On April 23, 2003, Cooper provided all documents to Chase necessary for presentment of its draft on the LOC. (*See* Trustee's Mot. Summ. J., Adv. No. 05-03317, Doc. No. 23, Ex. A at CHASE00104; Adv. No. 05-03335, Doc. No. 22, Ex. A at CHASE00104; Adv. No. 05-03332, Doc. No. 32, Ex. A at CHASE00104; Adv. No. 05-03337, Doc. No. 37, Ex. A at CHASE00104.)

5. On April 25, 2003, Chase presented these documents to the Confirming Bank. (*See* Trustee's Mot. Summ. J., Adv. No. 05-03317, Doc. No. 23, Ex. A at CHASE00103; Adv. No. 05-03335, Doc. No. 22, Ex. A at CHASE00103; Adv. No. 05-03332, Doc. No. 32, Ex. A at CHASE00103; Adv. No. 05-03337, Doc. No. 37, Ex. A at CHASE00103.)

6. On May 6, 2003, the Confirming Bank honored Cooper's draft on the LOC and remitted the proceeds of the LOC to Chase on Cooper's behalf. On the same day, Chase transferred the LOC proceeds to Defendants as stated in the Assignment Letters. (*See* Trustee's Mot. Summ. J., Adv. No. 05-03317, Doc. No. 23, Ex. A at CHASE00113; Adv. No. 05-03335, Doc. No. 22, Ex. A at CHASE00127; Adv. No. 05-03332, Doc. No. 32, Ex. A at CHASE00125; Adv. No. 05-03337, Doc. No. 37, Ex. A at CHASE00129.)

7. On May 7, 2003 (the Petition Date), an involuntary Chapter 7 Bankruptcy petition was filed against Cooper (Bankruptcy Case No. 03-36812-H4-7; Doc. No. 1) (the Bankruptcy Case).

8. On June 4, 2003, the Court entered the Order for Relief and appointed Ben B. Floyd Interim Trustee of Cooper's estate pursuant to 11 U.S.C. § 701. (Bankruptcy Case, Doc.

No. 33.) On August 7, 2003, Ben B. Floyd was appointed permanent Trustee of Cooper's estate pursuant to 11 U.S.C. § 702. (Bankruptcy Case, Doc. No. 127.)

9. On May 6, 2005, the Trustee initiated these Adversary Proceedings to recover certain transfers to Defendants pursuant to 11 U.S.C. §§ 547, 549 and 550. The Trustee's Original Complaints named American, Roland, Oilfield, and Triple-S as Defendants. (Adv. No. 05-03317, Doc. No. 1; Adv. No. 05-03335, Doc. No. 1; Adv. No. 05-03332, Doc. No. 1; Adv. No. 05-03337, Doc. No. 1.)

10. On March 1, 2006, the Trustee moved for Partial Summary Judgment against Defendants, requesting the Court to hold that the Cash Transfers and the LOC Transfers constitute preferences under 11 U.S.C. § 547(b).[2] The Trustee reserved all issues relating to Defendants' affirmative defenses. (Tr's Mot. Summ. J., Adv. No. 05-03317, Doc. No. 23; Adv. No. 05-03335, Doc. No. 22; Adv. No. 05-03332, Doc. No. 32; Adv. No. 05-03337, Doc. No. 37.)

11. On March 1, 2006, Oilfield and Triple-S each filed Motions for Partial Summary Judgment against the Trustee seeking to dismiss the Trustee's LOC claims. (Adv. No. 05-03332, Doc. No. 31; Adv. No. 05-03337, Doc. No. 38.)

12. On March 16, 2006, Oilfield filed a Response to Trustee's Motion for Partial Summary Judgment. (Adv. No. 05-03332, Doc. No. 36.)

13. On March 20, 2006, the Trustee filed a Response to Oilfield and Triple-S's Motion for Summary Judgment. (Adv. No. 05-03332, Doc. No. 38; Adv. No. 05-03337, Doc. No. 45.)

14. On March 21, 2006, American and Roland each filed Responses to Trustee's Motion for Summary Judgment. (Adv. No. 05-03317, Doc. No. 28; Adv. No. 05-03335, Doc. No. 24.)

15. On March 21, 2006, Triple-S filed a Response and Objection to Trustee's Motion for Partial Summary Judgment. (Adv. No. 05-03337, Doc. No. 43.)

16. On March 23, 2006, a hearing was held on the competing Motions for Partial Summary Judgment. The only transfers in dispute at the hearing were the LOC Transfers. American, Roland, and Triple-S did not dispute the Cash Transfers as preferences but reserved the right to defend on their affirmative defenses.

---

[2] As to Oilfield, the Trustee raises only the LOC Transfer in his Motion. For the other three defendants, the Trustee asserts that both the Cash Transfers and the LOC Transfers are preferences.

## III. CONCLUSIONS OF LAW

### A.    Jurisdiction and Venue

This Court has jurisdiction over these Adversary Proceedings pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b)(2)(F). This dispute is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

### B.    Summary Judgment Standard

A court may grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Summary judgment is appropriate "when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact precluding judgment as matter of law for the movant." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). A dispute about a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Stafford v. True Temper Sports*, 123 F.3d 291, 294 (5th Cir. 1997).

### C.    The LOC Transfers

To be avoidable under § 547(b) of the Bankruptcy Code[3], a transfer must have been made on or within ninety days before the date of the bankruptcy petition. 11 U.S.C. § 547(b)(4) (2005).[4] The Trustee argues that Cooper did not properly effect assignments of the LOC proceeds as of May 22, 2002, when Cooper sent the Assignment Letters to Chase. The Trustee further argues that even if the purported assignments in 2002 were valid, for purposes of § 547(b), the LOC Transfers occurred on May 6, 2003, when proceeds were actually disbursed to Defendants.

The two questions presented before this Court in this Memorandum Opinion are:

(1) Were there valid assignments of the LOC proceeds by Cooper to Defendants as of May 22, 2002? and

---

[3] Sections referenced under the Bankruptcy Code mean sections under 11 U.S.C.

[4] Under 11 U.S.C. § 547(b), the Trustee may avoid any transfer of an interest of the Debtor in property–
  1) to and for the benefit of a creditor;
  2) for or on account of an antecedent debt owned by the debtor before such a transfer was made;
  3) made while the debtor was insolvent;
  4) made on or within ninety days before the date of the filing of the debtor's bankruptcy petition; and
  5) that enables such creditor to receive more than such creditor would receive if i) the case were a case under Chapter 7 of [the Bankruptcy Code]; ii) the transfer had not been made; and iii) such creditor received payment of such debt to the extent allowed by the provisions of [the Bankruptcy Code]. 11 U.S.C. § 547(b).

Because the Court believes that the LOC Transfers do not satisfy §547(b)(4) and thus are not preferences, the Court addresses only §547(b)(4) in this Opinion without deciding whether the other elements of §547(b) have been met.

(2) Even if valid assignments took place on May 22, 2002, did the LOC Transfers occur on May 6, 2003, when the proceeds were received by Defendants, such that these transferred funds came within the 90-day preference period under §547(b)?

### 1. Did the Assignment Letters operate as valid express assignments of the LOC proceeds as of May 22, 2002?

The Defendants argue that Cooper effected absolute assignments of its rights in the LOC proceeds as of May 22, 2002, when it executed the Assignment Letters and delivered the LOC to Chase. This Court agrees. In his Motions and Responses, the Trustee makes three arguments to challenge the validity of the assignments. First, the Assignment Letters did not assign Cooper's interest in the proceeds because the Assignment Letters failed under their own terms due to an unsatisfied condition in the Letters. Second, the assignments do not comply with the Texas Business and Commerce Code (the UCC) because there was no consent of the issuer or nominated person. Third, the Assignment Letters failed as express assignments under Texas common law because they did not evidence Cooper's intent to transfer its rights in the LOC proceeds and Cooper did not relinquish control of the LOC proceeds.

The Trustee's first argument fails because the alleged unsatisfied condition did not prevent the validity of the assignments. The Trustee's second argument also fails because lack of consent from the issuer or nominated person does not affect the validity of an outright assignment of proceeds as against the Trustee. Chapter 5 of the UCC expressly permits an assignment of letter of credit proceeds. As to the Trustee's third argument, the Court believes that there is no genuine issue of fact as to Cooper's intent to assign its right to the LOC proceeds, which was clearly shown in the Assignment Letters.

### a. The Assignments do not fail because of the alleged unsatisfied condition in the Assignment Letters.

The Trustee claims that the Assignment Letters demonstrate that the purported assignments were effective only upon Chase's honor of Cooper's draft on the LOC, [5] a condition that was never satisfied because Chase, as an advising bank, did not honor Cooper's draft on the LOC, and the Confirming Bank did. The Trustee then concludes that the Assignment Letters failed on their own terms and thus the subsequent disbursement of proceeds was not pursuant to the Assignment Letters. The Trustee's interpretation of the Assignment Letters is incorrect.

The Court agrees that the Confirming Bank was the one that honored Cooper's draft on the LOC. It is also undisputed that Chase's role in the LOC transactions was to present Cooper's draft to the Confirming Bank on behalf of Cooper and then assign the proceeds to Defendants as stated in the Letters. The Court disagrees with the Trustee that Chase's honor of the draft in its literal sense was a condition precedent to the assignments of LOC proceeds. As the parties have

---

[5] The Assignment Letters state, "[Cooper] hereby authorizes and directs [Chase] to pay the proceeds of each draft drawn by the Debtor, payable to [Chase's] order, and in compliance with the above described Letter of Credit, *if and when such draft is honored by* [Chase]. . . ." (*See* Assignment Letters, Tr's Mot. Summ. J., Adv. No. 05-03317, Doc. No. 23, Ex. A at CHASE00026; Adv. No. 05-03335, Doc. No. 22, Ex. A at CHASE00057; Adv. No. 05-03332, Doc. No. 32, Ex. A at CHASE00061; Adv. No. 05-03337, Doc. No. 37, Ex. A at CHASE00069.)

agreed, Chase was only the advising bank on the LOC transactions and was not independently obligated to pay from its own funds.[6] Chase could not "honor" the draft. Logically, this condition could not be intended as a condition precedent to the assignments.

Cooper could not have reasonably expected Chase to honor the draft directly and, at the same time, have designated Chase as an advising bank. To the extent that the Trustee's argument may raise an ambiguity over the terms of the Assignment Letters, extrinsic evidence of the parties' intentions may be introduced to resolve such ambiguity and uncertainty. *Triad Elec. & Controls, Inc. v. Power Sys. Eng'g, Inc.*, 117 F.3d 180, 191 (5th Cir. 1997) (applying Texas law). As shown in the Teichgraeber Affidavits submitted by the Trustee, Cooper instructed Chase to pay Defendants the stated amounts "upon Chase's receipt of those proceeds from the Confirming Bank."[7] Under this arrangement, Chase would present Cooper's documents to the Confirming Bank, receive the LOC proceeds, and disburse payment to Defendants. The Teichgraeber Affidavits clearly show that Chase would transfer proceeds to Defendants once Chase received the money from the Confirming Bank, not when Chase honored the draft.

Furthermore, general contract principles disfavor conditions. *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990). "When the intent of the parties is doubtful or when a condition would impose an absurd or impossible result, the agreement will be interpreted as creating a covenant rather than a condition." *Id.* A forfeiture by finding a condition precedent will be avoided when possible under another reasonable reading of the contract. *Id.* Here, if the words "if and when such draft is honored by you" had operated as a condition, Cooper must have intended to achieve nothing from executing the Assignment Letters because it knew that the draft could not be honored directly by Chase. Such an absurd result compels the Court not to interpret the Assignment Letters in the way suggested by the Trustee.

Therefore, merely because the parties used the words "if and when such draft is honored by you," it is a strained argument to suggest that the parties intended the assignment to fail absolutely. Interpreting the words in their literal sense here would produce an absurd result. Thus, Chase's honor of the draft was not a condition precedent to the assignments. The Assignment Letters did not fail simply because of the alleged unsatisfied condition.

### b. The assignments are permissible under the UCC and did not fail for lack of consent by the issuer or nominated person.

Letter of credit transactions are governed by Chapter 5 of the UCC. The Trustee argues that the assignments failed because of lack of consent by the issuer or nominated person under the UCC.[8] The Trustee's argument is misplaced because he does not differentiate between

---

[6] Under the UCC, an advising bank is "a person who, at the request of the issuer, a confirmer, or another adviser, notifies or requests another adviser to notify the beneficiary that a letter of credit has been issued, confirmed, or amended." TEX. BUS. & COM. CODE ANN. § 5.102(a)(1) (Vernon 2002).

[7] Teichgraeber Affs., Tr's Mot. Summ. J., Adv. No. 05-03317, Doc. No. 23, Ex. B; Adv. No. 05-03335, Doc. No. 22, Ex. B; Adv. No. 05-03332, Doc. No. 32, Ex. B; Adv. No. 05-03337, Doc. No. 37, Ex. B.

[8] Under the UCC, "nominated person" means a person whom the issuer: (A) designates or authorizes to pay, accept, negotiate, or otherwise give value under a letter of credit; and (B) undertakes by agreement or custom and practice to reimburse. TEX. BUS. & COM. CODE ANN. § 5.102(a)(11). A confirming bank is automatically a nominated person. *See Id.* at § 5.102(a)(4).

7

creation of a security interest in the proceeds and assignment of the proceeds. The latter does not require the consent of the issuer or nominated person.

### i. Letter of credit proceeds are freely assignable under Chapter 5 of the UCC, and such assignment is governed by common law rather than Chapter 9 of the UCC.

Section 5.114 of the UCC governs assignments of letter of credit proceeds. TEX. BUS. & COM. CODE ANN. § 5.114 (Vernon 2002). Section 5.114(b) provides:

> A beneficiary may assign its right to part or all of the proceeds of a letter of credit. The beneficiary may do so before presentation <u>as a present assignment of its right to receive proceeds</u> contingent upon its compliance with the terms and conditions of the letter of credit. *Id.* (emphasis added).

Section 5.114(b) of the UCC "expressly validates the beneficiary's present assignment of letter of credit proceeds if made after the credit is established but before the proceeds are realized." *Id.* at § 5.114, cmt. 1. Thus, letter of credit proceeds are freely assignable.

The next question is what law governs when a beneficiary assigns the proceeds. In pertinent part, § 5.114(f) of the UCC states:

> The mode of creating and perfecting a security interest in <u>or</u> granting an assignment of a beneficiary's rights to proceeds is governed by Chapter 9 or <u>other law</u>. Against persons other than the issuer, transferee beneficiary, or nominated person, the rights and obligations arising upon the creation of a security interest or other assignment of a beneficiary's right to proceeds and its perfection are governed by Chapter 9 or <u>other law</u>. *Id.* at §5.114(f) (emphasis added).

Under § 5.114(f), a letter of credit beneficiary may either create a security interest in the proceeds or assign that right absolutely to a third party. *Id.* The rights of an assignee against parties other than the issuer, transferee beneficiary, or a nominated person are governed (a) by Chapter 9 of the UCC when a security interest is involved;[9] or (b) by "other law" when the beneficiary has effected an absolute assignment. *Id.* If the beneficiary creates a security interest, Chapter 9 of the UCC governs the secured party's right as against third parties such as the Trustee here. On the other hand, if the beneficiary makes an outright assignment of the proceeds, then "other law," namely the common law of assignment, applies.

---

[9] The scope of Chapter 9 is defined in § 9.109(a) as follows:
  Except as otherwise provided in Subsections (c), (d), and (e), Chapter 9 applies to:
  (1) a transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract; (2) an agricultural lien; (3) a sale of accounts, chattel paper, payment intangibles, or promissory notes; (4) a consignment; (5) a security interest arising under Section 2.401, 2.505, 2.711(c), or 2A.508(e), as provided in Section 9.110; and (6) a security interest arising under Section 4.210 or 5.118. § 9.109(a).

8

Under Texas law, the test for creation of a security interest is whether the parties intended the transaction to have the effect as security, because the parties must have intended that their transaction fall within the scope of Chapter 9. *Morgan Bldg. & Spas v. Turn-Key Leasing*, 97 S.W.3d 871, 876 (Tex. App.—Dallas 2003, pet. denied). In making this determination, a court is required to examine the substance of the transaction documents in light of the particular circumstances of the case. *In Re Cox*, 179 B.R. 495, 499 (Bankr. N.D. Tex. 1995). In this proceeding, the Assignment Letters are entitled "Assignment of Proceeds." The Letters clearly directed and authorized Chase to pay the proceeds to the named assignees. Nowhere in the documents did the parties express an intention to create a security interest in the proceeds. Applying the test to this case, the Court is convinced that Cooper intended to effect an absolute assignment rather than create a security interest in the proceeds.

Having concluded that Cooper did not intend to create a security interest in the proceeds, this Court holds that Chapter 9 of the UCC is inapplicable to the LOC Transfers and that the LOC Transfers are governed by Chapter 5 of the UCC and common law.

### ii. The Issuer's consent is not required for an outright assignment of LOC proceeds under Chapter 5 of the UCC.

Citing Official Comment 3 to §§ 5.114 and 9.107 of the UCC, the Trustee asserts that, for an assignment of proceeds to be valid, both Chapter 5 and Chapter 9 of the UCC expressly require the consent of the issuer or nominated person. This is an incorrect statement of the law. It is true that consent of the issuer or nominated person is required for perfection of a security interest in the proceeds under Chapter 9 of the UCC. *See* TEX. BUS. & COM. CODE. ANN. § 9.107. However, Chapter 9 is not implicated in this proceeding because Cooper did not intend to create a security interest. Under § 5.114, consent is not a requirement for validating the assignment of letter of credit proceeds between assignor and assignee.

The Trustee confuses under what circumstances consent is required. § 5.114 definitely requires an issuer's consent to an assignment <u>in order for the issuer to be unconditionally bound by the assignment.</u> However, § 5.114 does not require an issuer's consent <u>in order for an assignment to be valid between assignor and assignee.</u>

The related statutory provision and comment to § 5.114 reflect that consent is only required for the issuer to be unconditionally bound—and even then, consent may not be unreasonably withheld:

> An issuer or nominated person need not recognize an assignment of proceeds of a letter of credit until it consents to the assignment. *Id.* at § 5.114(c).

> An issuer or nominated person has no obligation to give or withhold its consent to an assignment of proceeds of a letter of credit, but <u>consent may not be unreasonably withheld</u> if the assignee possesses and exhibits the letter of credit and presentation of the letter of credit is a condition to honor. *Id.* at § 5.114(d) (emphasis added).

9

>By requiring that an issuer or nominated person consent to the assignment of proceeds of a letter of credit, subsections (c) and (d) follow more closely recognized national and international letter of credit practices than did prior law . . . By <u>unconditionally consenting to such an assignment, the issuer or nominated person becomes bound</u>, subject to the rights of the superior parties specified in subsection (e), to pay to the assignee the assigned letter of credit proceeds that the issuer or nominated person would otherwise pay to the beneficiary or another assignee. *Id.* at § 5.114, cmt. 3 (emphasis added).

Nothing in § 5.114 and Comment 3 expressly requires consent for an assignment to be valid <u>between assignor and assignee</u>. In these Adversary Proceedings, the Court faces the question of whether the assignments from Cooper to Defendants were valid assignments under the law, not whether the Issuing Bank or the Confirming Bank was absolutely bound by the assignments when they were made. Section 5.114(c), (d), and Comment 3 address the latter issue and make it clear that the issuer or nominated person is not bound by an assignment until consenting to the assignment. The Court would have to address this particular issue if the Issuing Bank or the Confirming Bank had refused to honor the draft, which did not happen here. The purpose of § 5.114(c) and (d) is to prevent an issuer or its nominated person from having to pay out more than once to competing assignees. *See Id.* at § 5.114, cmt. 3 (stating that consent minimizes the risk to the issuer or nominated person of having to pay twice). An issuer may not unreasonably withhold its consent if the risk of double-payment is minimized and the issuer has little, if any, legitimate reasons not to consent to the assignment. *Id.* at § 5.114(d). Therefore, the purpose of the consent requirement is not to create a statutory barrier to the free assignment of proceeds, but rather to protect an issuer from competing claims to proceeds. Lack of consent may affect the issuer or nominated person's obligation to honor the draft presented by the assignees, but it may not invalidate the assignment as against the Trustee if it is properly made under the law.

Therefore, this Court holds that the validity of an assignment of letter of credit proceeds as against the Trustee does not depend on the issuer or nominated person's consent.

### c. The assignments are valid under Texas common law.

No words of art are required to constitute an assignment; any words that fairly indicate an intention to make the assignee owner of a claim are sufficient. *U.S. v. Central Gulf Lines, Inc.*, 974 F.2d 621 (5th Cir. 1992) (stating that there are no required forms or formalities by which an assignment must be made). "Under Texas law, assignment is a manifestation to another person by the owner of a right indicating his intention to transfer, without further action or manifestation of intention, his right to such other person or third person." *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Employee Health Care Plan*, 426 F.3d 330, 334 (5th Cir. 2005).

The Trustee argues that the language of the Assignment Letters did not indicate Cooper's intent to assign the LOC proceeds to Defendants and that surrender of the LOC to Chase did not provide Defendants with sufficient control over the LOC proceeds to effect the assignments. This Court disagrees.

### i. The Assignment Letters evidence Cooper's intent to assign the proceeds.

Intent to transfer is the essential factor of a valid assignment. *In re Gibraltar Res., Inc.*, 211 B.R. 216, 220 (Bankr. N.D. Tex. 1997). The manifestation of intent may be made to the other or to a third person on his behalf and, except as provided by statute or by contract, may be made either orally or by writing. RESTATEMENT (SECOND) OF CONTRACTS § 317(1) (1981).

The Court believes that the language of the Assignment Letters clearly shows Cooper's intent to assign the LOC proceeds. Specifically, the Letters state as follows: "we hereby <u>authorize and direct you to pay the proceeds of each draft</u> drawn by us, payable to your order, under and in compliance with the above described Letter of Credit, if and when such draft is honored by you, as follows: [Designated Payee]."[10] (emphasis added). The Assignment Letters further state as follows "Please advise the Designated Payee of your acceptance of this instrument and, in consideration thereof, we agree that the instrument is <u>irrevocable</u>." (emphasis added).

The Trustee challenges Cooper's intent to assign by arguing that Cooper placed a specific condition in the Assignment Letters: "if and when the draft is honored by you." As analyzed above, imposing such a condition would produce an absurd result contrary to the parties' intention. As shown in the Teichgraeber Affidavits submitted by the Trustee in his Motions, Cooper instructed Chase to pay Defendants the stated amounts "upon Chase's receipt of those proceeds from the Confirming Bank."[11] Cooper gave these instructions with the understanding that it would provide Chase with all documents necessary for presentment under the LOC. Under this arrangement, Chase would then present these documents to the Confirming Bank, receive the LOC proceeds, and disburse payment to Defendants. The Trustee cannot reasonably contend that Cooper did not actually intend the assignments when it executed the Assignment Letters while all of his other evidence suggests otherwise. This Court believes that there is no genuine issue of fact as to Cooper's intent to make absolute assignments as of May 22, 2002.

### ii. Cooper relinquished control of the proceeds after executing the assignments.

Relinquishment of control is required as an element of equitable assignment. *See In re Gibraltar Res., Inc.*, 211 B.R. at 221 (for a court to find equitable assignment, agreement must evidence intent to transfer interest, and transferor must relinquish control over interest), *see also Pape Equip. Co. v. I.C.S., Inc.*, 737 S.W.2d 397, 402 (Tex. App.—Houston [14 Dist.] 1987, writ ref'd n.r.e.) (to be an equitable assignment, agreement must evidence intent to transfer interest and transferor must relinquish control over interest by surrendering control over funds). However, this Court has not found any Texas cases that make relinquishment of control an essential element of an express assignment.

---

[10] Assignment Letters, Tr's Mot. Summ. J., Adv. No. 05-03317, Doc. No. 23, Ex. A at CHASE00026; Adv. No. 05-03335, Doc. No. 22, Ex. A at CHASE00057; Adv. No. 05-03332, Doc. No. 32, Ex. A at CHASE00061; Adv. No. 05-03337, Doc. No. 37, Ex. A at CHASE00069.

[11] Teichgraeber Affs., Tr's Mot. Summ. J., Adv. No. 05-03317, Doc. No. 23, Ex. B; Adv. No. 05-03335, Doc. No. 22, Ex. B; Adv. No. 05-03332, Doc. No. 32, Ex. B; Adv. No. 05-03337, Doc. No. 37, Ex. B.

11

Even assuming that relinquishment of control is an element of an express assignment, the Court believes that Cooper had satisfied the requirement. To accomplish an assignment, the would-be assignor must relinquish control over the fund. *First Nat'l Bank of Hollywood v. Am. Foam Rubber Corp.*, 530 F.2d 450, 455 (2nd Cir. 1976). "'The assignor must not retain any control over the fund–any authority to collect, or any power of revocation.'" *In re Gibraltar Res., Inc.*, 211 B.R. at 222 (quoting *In re Ashford*, 73 B.R. 37, 39 (Bankr. N.D. Tex. 1987)).

The Trustee argues that Cooper did not relinquish control of the LOC proceeds to Defendants because neither the Issuing Bank nor the Confirming bank can be compelled to pay Defendants due to lack of consent. The Trustee's argument is off base. The issue here is whether Cooper had relinquished its control of the LOC proceeds, not whether the Issuing Bank or the Confirming Bank owed an unconditional duty to pay proceeds to Defendants.

It is undisputed that Cooper delivered the LOC to Chase right after it executed the Assignment Letters. The LOC was in the possession of Chase.

Jeff Deutsch and John Stude, who were the two officers at Cooper responsible for negotiating and effecting these assignments, stated in their affidavits that, after May 22, 2002, Cooper no longer had an ownership interest in the LOC proceeds and that Cooper could not thereafter rescind the assignments and request Chase to pay the proceeds directly to Cooper instead of the assignees.[12]

The Trustee objects to Paragraph 5 of both the Deutsch Affidavit and the Stude Affidavit as impermissible parol evidence. The Court disagrees. The parol evidence rule does not operate to exclude extrinsic evidence which tends to aid, confirm, or explain a writing, rather than alter it, or which assists a court in understanding and interpreting the language of the writing. *Pennzoil Co. v. F.E.R.C.*, 645 F.2d 360, 388 (5th Cir. 1981) ("The parol evidence rule excludes extrinsic evidence offered to vary or contradict, rather than to explain and interpret, terms of an integrated contract."); *Ferguson v. DRG/Colony North, Ltd.*, 764 S.W.2d 874, 882 (Tex. App.—Austin 1989, writ denied); *Texas Builders v. Keller*, 928 S.W.2d 479, 481 (Tex. 1996) ("Parol evidence may be used to explain or clarify the written agreement."). The language in Paragraph 5 of both affidavits is not offered to vary, add, or contradict the terms of the Assignment Letters, but to explain or clarify the meaning of the terms. The Assignment Letters state that "the instrument is irrevocable." Paragraphs 5 of both the Deutsch Affidavit and the Stude Affidavit further confirm or explain that the assignments were irrevocable and that Cooper lost control of the proceeds after the assignments. Such parol evidence is admissible under Texas law.

By tendering the letter of credit and executing the irrevocable assignments, Cooper completely divested itself of control over the assigned proceeds. Without the letter of credit, Cooper could not draw on the letter of credit from the Issuing Bank or the Confirming Bank. The Confirming Bank would not honor a draft without the actual letter of credit. Additionally, the Assignment Letters state unequivocally that "the document is irrevocable." Cooper could not later undo the assignments and compel payment of the proceeds to itself.

---

[12] Stude Aff. & Deutsch Aff., Triple-S's Mot. Summ. J., Adv. No. 05-03337, Doc. No. 38, Ex. C at ¶5 and D at ¶5.

Under these circumstances, this Court holds that all the requirements necessary to effect assignments of the LOC proceeds have been satisfied under the common law of assignment, i.e., the applicable "other law" as described in UCC § 5.114(f). Specifically, the Assignment Letters constitute a written manifestation by Cooper of its intention to transfer its right in the proceeds to the assignees/Defendants. Cooper relinquished control of the proceeds when it executed the assignments. The effective date of an assignment is the day it is signed. *Ferrer v. Guevara*, 2005 WL 3254555, at *2 (Tex. App.—El Paso 2005, no pet. h.). Thus, the assignments were complete on May 22, 2002, when Cooper signed and executed the four Assignment Letters.

### iii. Equitable assignments

In certain instances, Texas courts will imply an equitable assignment when no express assignment can be established. *See Pape Equip. Co.*, 737 S.W.2d at 402. As an alternative, Defendants argue that even if the assignment does not satisfy the requirements of an express assignment, the assignment still qualifies under Texas law as an absolute equitable assignment of Cooper's right in the proceeds as of May 22, 2002. Because this Court has decided that Cooper intended to create the assignments and had relinquished control of the proceeds, the two requirements for an equitable assignment are also satisfied. *See id.* (requiring intent and relinquishment of control for equitable assignments); *see also In re Gibraltar Res., Inc.*, 211 B.R. at 221.

In sum, UCC § 5.114 and the common law of assignment apply to Cooper's assignments of the LOC proceeds. UCC § 5.114 allows a beneficiary of a letter of credit to assign the right to proceeds as a present transfer. While the issuer or nominated person's consent is required for perfection of a security interest in proceeds, consent is not a requirement for an outright assignment of proceeds. Cooper's assignments did not fail for lack of consent by the Confirming Bank. The Assignment Letters clearly demonstrate Cooper's intent to assign and transfer the proceeds to Defendants. Cooper relinquished control of the proceeds when it executed the assignments. For all the foregoing reasons, the Court holds that there were valid assignments of Cooper's right in the LOC proceeds to Defendants as of May 22, 2002.

### 2. Even if the assignment in 2002 was valid, for purposes of § 547(b) of the Bankruptcy Code, did the LOC Transfer occur on May 6, 2003 when the actual payment of the proceeds was received by Defendants?

Under § 547(e)(3) of the Bankruptcy Code, for purposes of § 547, "a transfer is not made until the debtor has acquired rights in the property transferred." 11 U.S.C. § 547(e)(3). Therefore, the critical question in determining the time of the transfer is when the debtor has acquired rights in the property transferred.

The Trustee argues that the Assignment Letters gave Defendants a contractual right to payment that vested during the preference period. The Trustee concludes that for purposes of avoidance under § 547 of the Bankruptcy Code, the LOC Transfers did not occur until Defendants received the proceeds within the preference period under § 547(e)(3). To support his argument, the Trustee primarily relies on *Diversified World Investments, Limited v. Omni International, Limited.* 12 B.R. 517 (Bankr. S.D. Tex. 1981). In *Diversified*, the court held that

13

the transfer occurred when the payment was made pursuant to an assignment of rental payments. The debtor in *Diversified* assigned its right to payment under an aircraft lease agreement to a creditor. *Id.* at 518. The assignment took place outside the preference period. *Id.* Payment, however, was received by the creditor within 90 days of the bankruptcy filing. *Id.* The *Diversified* court believed that § 547(e)(3) was intended to bring payments made pursuant to an assignment within the term "transfer" because, under § 101(40)[13] of the Bankruptcy Code, the term transfer was intended to be "as broad as possible." *Id.* at 519. The *Diversified* court further emphasized that if the lease had been terminated for any reason, the debtor would not have been entitled to receive the rental payment. *Id.* Accordingly, the *Diversified* court reasoned that the creditor had rights to the lease payment only as it was made by the debtor's lessee, notwithstanding the previously executed assignment. *Id.* Therefore, the *Diversified* court concluded that the transfer was not made until such time as the rents accrued under the term of the lease. *Id.*

*Diversified* has been widely criticized and represents a minority view. Two federal courts have expressly rejected and criticized the reasoning in *Diversified*. *In re Long Chevrolet, Inc.*, 79 B.R. 759, 765-66 (N.D. Ill. 1987); *In re Studio Five Designs, Inc.*, 90 B.R. 432, 437-38 (Bankr. N.D. Cal. 1988). Many federal courts, including the Fifth Circuit, have reached the opposite conclusion to the one drawn by the *Diversified* court on the same issue. *Gamble v. Mathias*, 61 F.2d 911 (5th Cir. 1931); *In re Gibraltar Res., Inc.*, 202 B.R. 586 (N.D. Tex. 1996); *Beck v. Int'l Harvester Credit Corp.*, 29 B.R. 907 (Bankr. D. Conn. 1983); *In re Jacobson*, 54 B.R. 72, 74 (Bankr. D. Minn. 1985); *In re E.P. Hayes, Inc.*, 29 B.R. 907 (Bankr. D. Conn. 1983).[14] As noted in *In re Studio Five Designs, Inc.*, § 547(e)(3) was not intended to disrupt the settled rule under pre-Bankruptcy Code law that an assignment of contract rights was effective as of the date of assignment and could not avoided as a preference if payment was received during the preference period. 90 B.R. at 438. The *Diversified* decision is also criticized in Collier on Bankruptcy, the leading treatise in bankruptcy, which states: "Under the [Diversified] court's reasoning, section 547(e)(3) would provide the trustee with a potent weapon for avoiding legitimate security arrangements, *a result not intended by Congress.* In fact, the debtor has assigned its interest in the rentals long before bankruptcy and *had nothing to transfer* during the 90-day preference period." LAWRENCE P. KING, ET AL., 5 COLLIER'S ON BANKRUPTCY ¶ 547.05[7][a] (15th ed. 2005) (emphasis added).

More importantly, this Court has found two cases within the Fifth Circuit that are directly contrary to the *Diversified* holding. *See Gamble*, 61 F.2d 911; *In re Gibraltar Res., Inc.*, 202 B.R. 586. In *Gamble*, the debtor, who sustained a loss by fire, assigned his right under his

---

[13] This subsection is now codified as 11 U.S.C. § 101(54).
[14] *See also Goldstein v. Madison Nat'l Bank*, 807 F.2d 1070, 1074 (D.C. Cir. 1986) (holding that transfer occurred in law when assignment was executed); *In re Adventist Living Ctrs.*, 174 B.R. 505, 512 (Bankr. N.D. Ill., 1994) (holding that transfer occurs on date that contractual right to payment is assigned, not on date payment is actually made or collected); *In re Anchorage Nautical Tours, Inc.*, 102 B.R. 741, 744 (9th Cir. 1989) (holding that upon assignment, assignor's rights were fully extinguished so that if assignor later received proceeds of assigned rights, assignor held them in constructive trust for assignee, and that assignee's rights would be superior even to subsequent judicial lienor); *In re Armando Gerstel, Inc.*, 65 B.R. 602, 605 (S.D. Fla. 1986) (holding that when assignments took place outside preference period, proceeds that debtor received during preference period never became property of debtor's estate, but were held in trust for assignees); *In re Roy Young, Inc.*, 66 B.R. 16, 19 (Bankr. W.D. La. 1986) (transfer of a future right is a valid transfer effective as of the date of the assignment).

14

insurance policy to his creditor by written indorsement on the back of the policies. *Id.* The assignment took place outside the preference period. *Id.* Then, within the preference period, three checks or drafts were received from the insurance companies and delivered to the creditor. *Id.* The trustee brought a claim against the creditor, seeking to recover the sum collected under the assignment made by the debtor. *Id.* The trustee argued that the transfer of the insurance policies was not completed until the money was paid under the policies. *Id.* The Fifth Circuit disagreed with the trustee. *Id.* The Fifth Circuit opined that a present assignment of an interest passes the title to it as of the date of the assignment and that moneys collected under it are the moneys not of the bankrupt, but of the assignee. *Id.* Accordingly, the Fifth Circuit ruled that an unqualified indorsement passes title presently and affirmed the judgment in favor of the creditor. *Id.* at 912.

The *Gamble* decision was further reinforced in *In re Gibraltar Resources, Inc.* In *Gibraltar*, the federal district court in the Northern District of Texas affirmed the summary judgment of the bankruptcy court dismissing the trustee's preference action. 202 B.R. 586. The debtor in that case had insurance from various underwriters at Lloyd's, London. Following a loss on an oil and gas well, a court signed an agreed final judgment that directed the distribution of the insurance proceeds to various creditors of the debtor. *Id.* Later, within 90 days of the bankruptcy petition, the creditors received the proceeds distributed by the court clerk. *Id.* The court ruled that in calculating the preference period, "'*a transfer occurs on the date the contractual right to payment is assigned, not on the date payment is actually made or collected.*'" *Id.* at 587 (quoting *In re Adventist Living Ctrs.*, 174 B.R. 505, 512) (Bankr. N.D. Ill. 1994)) (emphasis added). The *Gibraltar* court specifically stated that "when a debtor makes an absolute assignment to a creditor, of money that the debtor is entitled to receive from a third party, a transfer is perfected and complete when the assignment is executed rather than when the money is disbursed to the creditor." *Id.* at 588. Because the agreed judgment constituted an absolute assignment of the insurance proceeds and the transfer occurred prior to the preference period, the district court affirmed the bankruptcy court's summary judgment dismissing the preference action. *Id.*

This Court finds the analysis in *Gamble* and *Gibraltar* more persuasive than that in *Diversified*. The *Diversified* court based its decision largely on the reasoning that the debtor did not acquire any right to the rentals except as they became due from its lessee; thus, under § 547(e)(3) of the Bankruptcy Code, the transfer was not made until such time as the rents accrued under the terms of the lease. 90 B.R. at 438. The Court believes this reasoning is flawed. The debtor clearly had a contractual right to the lease payment based on the lease agreement, even if the debtor had no right to demand the actual rental payment until it accrued under the lease. The *Diversified* court confused the contractual right to receive payment with the right to demand actual payment.

A letter of credit typically involves a contract between the issuer or confirming bank and the beneficiary. *East Girard Sav. Ass'n v. Citizens Nat'l Bank and Trust Co. of Baytown*, 593 F.2d 598, 601 (5th Cir. 1979) (describing three different contracts involved in letter of credit transactions).[15] Under the independence principle, an issuer's obligation to the beneficiary is

---

[15] "First, the issuing bank enters into a contract with its customer to issue the letter of credit. Second, there is a contract between the issuing bank and the party receiving the letter of credit. Third, the customer who procured the

15

independent from any obligation between the beneficiary and the issuer's customer. *Id.* at 603; *In re Compton Corp.*, 831 F.2d 586, 590 (5th Cir. 1987). The issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit. *East Girard Sav. Ass'n*, 593 F.2d at 601; *see Compton*, 831 F.2d at 590. All a beneficiary has to do to receive payment under a letter of credit is to show that it has performed all the duties required by the letter of credit. *Compton*, 831 F.2d at 590. Here, Cooper's contract right to the LOC proceeds as against the Confirming Bank arose when it became the beneficiary in March 2002. Although Cooper had to perform all the duties and present confirming documents in order to obtain payment from the bank, its right to the LOC proceeds came into play prior to that time. Therefore, Cooper had already acquired the contract right to the property transferred, i.e., the proceeds, at the time it made the assignments.

At the hearing, the Trustee pointed out only one later decision that expressly followed *Diversified*. *See In re Gull Air, Inc.*, 90 B.R. 10 (Bankr. D. Mass. 1988). *In re Gull Air* dealt with assignment of accounts receivable. *Id.* at 12. The debtor directed its bank to pay to a creditor a monthly amount of $50,000.00 to the extent that debtor's proceeds in the accounts generated by debtor's airline business equaled that amount. *Id.* Two payments were made within the preference period. *Id.* The bankruptcy court agreed with *Diversified* and held that transfer arising from the assignment occurred on date of payment, rather than date of assignment. *Id.* at 15-16[16]

*In re Gull Air* is distinguishable because an assignor's right to an account receivable is different from a beneficiary's right to proceeds under a letter of credit. The funds associated with the accounts in *In re Gull Air* were generated from the debtor's airline business. Thus, it was uncertain whether the debtor had a definite contractual right to future payment to the accounts. The amount of the accounts was totally contingent upon the debtor's business. The evidence in that case did not show that the debtor had a contractual right to the funds in the accounts before they were realized. However, a beneficiary of a letter of credit has a contractual right to the proceeds once the letter of credit is issued. *See In re Compton Corp.*, 831 F.2d at 590. Cooper had right to the LOC proceeds before it made the assignments.

Therefore, this Court is disposed to follow the decisions in *Gamble* and *Gibraltar* and believes that they are the prevailing law in this Circuit. As analyzed above, there were valid assignments of LOC proceeds on May 22, 2002. Cooper had rights to the proceeds transferred when it made the transfers. Therefore, the Court holds that for the purpose of calculating the

---

letter of credit signs a contract with the person receiving it, usually involving the sale of goods or the provision of some service." *East Girard Sav. Ass'n*, 593 F.2d at 601.

[16] The *Diversified* reasoning appears in a line of cases dealing with garnished wages. *See e.g., In re Walters*, 61 B.R. 426 (Bankr. D. Mont. 1986); *In re Krumpe*, 60 B.R. 575 (Bankr. D. Md. 1986); *In re Dunn*, 56 B.R. 275 (Bankr. M.D. La. 1985); *In re Perry*, 48 B.R. 591 (Bankr. M.D. Tenn. 1985); *In re Tabita*, 38 B.R. 511 (Bankr. E.D. Pa. 1984). *Contra In re Conner*, 733 F.2d 1560 (11th Cir. 1984); *In re Coppie*, 728 F.2d 951 (7th Cir. 1984); *In re Riddervold*, 647 F.2d 342 (2nd Cir. 1981); *In re Harrington*, 70 B.R. 301 (Bankr. S.D. Fla. 1987). At the hearing, the Trustee mentioned one of them: *In re Tabita*, 38 B.R. 511 (Bankr. E.D. Pa. 1984). Federal courts are divided on the issue of whether wages garnished during the preference period are preferences even if the garnishments are effected outside the preference period. *See* 5 COLLIER'S ON BANKRUPTCY ¶ 547.05[7][b] (15th ed. 2005). This Court believes that wage garnishment cases involve different concerns from those in assignments of letter of credit proceeds in this case. The Court need not address these wage garnishment cases.

preference period under § 547 of the Bankruptcy Code, the LOC transfers occurred as of May 22, 2002, when Cooper assigned the LOC proceeds to Defendants, not on May 6, 2003, the date when Defendants actually received proceeds pursuant to the previous assignments.

## IV. CONCLUSION

The Texas UCC permits a present assignment of letter of credit proceeds before presentment. While consent of the issuer or nominated person is a requirement to perfect a security interest in the proceeds, consent is not required to validate an assignment between the assignors and the assignees. Cooper executed and signed the Assignment Letters on May 22, 2002. It is undisputed that Cooper intended to assign the proceeds rather than create a security interest in the proceeds. There is no genuine issue of material fact that Cooper's assignments were valid under Texas law as of May 22, 2002.

The Court concludes that for the purpose of calculating the preference period under 11 U.S.C. § 547(b), a transfer occurs on the date the contractual right to the proceeds is assigned, not on the date the payment is actually made. The Court believes that Cooper effected valid irrevocable assignments of the LOC proceeds on May 22, 2002, almost one year before the Petition Date. Therefore, the LOC Transfers took place outside the 90-day preference period. The Trustee's avoidance power under §547(b) is not called into play.

For all of the foregoing reasons, the Court denies the Trustee's Motions for Partial Summary Judgment as to the LOC Transfers and grants the Trustee's Motions as to the Cash Transfers. Oilfield and Triple-S's Motions for Summary Judgment as to the LOC Transfers are also granted. This Court will issue separate orders consistent with this Memorandum Opinion.

Signed on this 11th day of April, 2006.

Jeff Bohm
United States Bankruptcy Judge